LE MANUFACTURE FRANCAISE DES PNEUMATIQUES MICHELIN, a Foreign Corporation, Petitioner,

v.

The DISTRICT COURT IN AND FOR THE COUNTY OF JEFFERSON, State of Colorado, the Honorable Gaspar Franz Perricone, one of the Judges thereof, Respondent.

No. 80SA308.

Supreme Court of Colorado, En Banc.

Dec. 8, 1980.

White & Steele, P. C., Walter A. Steele, James M. Dieterich, Denver, for petitioner; John M. Kenney, New Hyde Park, N. Y., of counsel.

David L. Kofoed, P. C., Roger T. Castle, Denver, for respondent.

LOHR, Justice.

In this original proceeding, we issued a rule to show cause why the respondent district court should not be prohibited from asserting jurisdiction over the petitioner, Le Manufacture Francaise Des Pneumatiques Michelin, a foreign corporation (Michelin of France), on the grounds that assertion of

jurisdiction is not authorized by the Colorado long–arm statute, section 13–1–124(1), C.R.S.1973, and violates due process of law. Finding no statutory or constitutional violation, we now discharge the rule.

Rick and Sheila Mrsny brought an action in Jefferson County district court against Michelin of France for injuries sustained in a one–car accident in Colorado on July 11, 1976, when a tire manufactured by Michelin of France allegedly failed.[1] Michelin of France moved to dismiss the suit for lack of personal jurisdiction and, after discovery on the issue, a hearing was held. The district court found that jurisdiction could be asserted over the foreign corporation consonant with both the long–arm statute, section 13–1–124(1), C.R.S. 1973, and due process of law. Michelin of France then petitioned this court for relief in the nature of prohibition pursuant to C.A.R. 21.

I.

A plaintiff seeking to establish personal jurisdiction over a defendant upon the basis of the long–arm statute must make a prima facie showing of threshold jurisdiction. Such showing may be established by the allegations of the complaint. *Pioneer Astro Industries, Inc. v. District Court*, 193 Colo. 409, 566 P.2d 1067 (1977); *Alliance Clothing, Ltd. v. District Court*, 187 Colo. 400, 532 P.2d 351 (1975); *Texair Flyers v. District Court*, 180 Colo. 432, 506 P.2d 367 (1973). In order to evaluate whether a prima facie showing of threshold jurisdiction has been established, it is also appropriate to consider evidence adduced at the hearing on a motion to dismiss. *Waterval v. District Court*, Colo., 620 P.2d 5 (1980).

1. In an earlier case, the Mrsnys sued Michelin Tire Corporation (a New York corporation) and a Colorado tire dealer, based upon the same accident which is the subject of their claim against Michelin of France. Through discovery it was learned that Michelin of France, not Michelin Tire Corporation, was the manufacturer of the tire which failed and that the Colorado tire dealer had no connection with that tire. Based on this information, summary judgment was granted in favor of both defendants. The Mrsnys then brought the instant action against Michelin of France.

The Mrsnys also appealed the summary judgment as to Michelin Tire Corporation only. In an unpublished opinion, the court of appeals affirmed the summary judgment, but granted the plaintiffs leave to amend their complaint. The materials before us indicate no amended complaint has been filed.

Here, we glean the facts relevant to the question of jurisdiction from the trial court's order denying Michelin of France's motion to dismiss, and from various affidavits, admissions, and answers to interrogatories which accompany the parties' briefs, as well as from the complaint.[2] The record below has not been made part of the record before us.

Michelin of France is a French corporation which engages in the business of manufacturing and selling tires. During the years 1973 through 1978, tires which it manufactured were used in more than one hundred countries in addition to the United States.

Michelin of France has no manufacturing facilities outside of France. It has no facilities of any kind in the United States and owns no property in this country. It does not have an appointed agent for service of process, a bank account, or a telephone listing in the United States. It engages in no advertising of its products in this country.

Since 1951 Michelin of France has sold tires to purchasers having principal places of business in the United States. In the years 1973 through 1978 approximately six to ten percent of the tires manufactured by Michelin of France were sold to Michelin Tire Corporation, a New York corporation (Michelin of New York), and Sears Roebuck and Company, each of which maintained its principal place of business in the United States. Those buyers purchased the tires f.o.b. Michelin of France's plant in France, for eventual resale within the United States. Michelin of France relinquished title and control over the tires upon sale.

Certain tires made and sold by Michelin of France have sidewall markings in English, among other languages, and code numbers required by the United States Department of Transportation (DOT). Tires so marked have been constructed to satisfy relevant United States safety standards. The tire which is the subject of this action has a DOT number on the sidewall. It was reasonably foreseeable that some of the tires manufactured by Michelin of France

would be used in Colorado or other parts of the United States.

Michelin of New York also purchases Michelin–brand tires manufactured by other foreign corporations. Such purchases are made f.o.b. Italy and Spain, and the tires are resold in the United States. Beginning in May 1975, Michelin of New York also manufactured Michelin–brand tires in the United States.

Neither Michelin of New York nor Michelin of France owns any of the other's stock. The only connection between these two corporations reflected by the record is their relationship as buyers and seller of Michelin of France tires.

The tire in question did not arrive in Colorado through a typical chain of distribution. Rather, it was one of four new Michelin tires purchased from a German retailer by an American serviceman who installed it on his Fiat automobile. The car subsequently was shipped to the United States and eventually was transferred to a Colorado car dealership in trade for a new vehicle. The plaintiffs purchased the car with the allegedly defective tire from this dealership. The failure of the tire and the ensuing accident occurred in Colorado.

Michelin of France was served with process in France. It does not contend that such service was improper. Instead, that corporation bases its motion to dismiss solely on the contention that the district court may not subject it to jurisdiction in this case consistent with our long–arm statute and due process of law. We disagree.

## II.

■ Before jurisdiction can be asserted over a foreign corporation, its conduct must bring it within the purview of our long–arm statute, section 13–1–124(1), C.R.S. 1973, which provides in pertinent part:

"(1) Engaging in an act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such

2. These materials were before the trial court in ruling on the motion to dismiss.

person, and, if a natural person his personal representative to the jurisdiction of the courts of this state concerning any cause of action arising from:

. . . . .

"(b) The commission of a tortious act within this state;"

■ In enacting our long–arm statute, the Colorado legislature intended to extend the jurisdiction of our courts to the fullest extent permitted by the due process clause of the United States Constitution. *Waterval v. District Court, supra; Jenner & Block v. District Court*, 197 Colo. 184, 590 P.2d 964 (1979); *Safari Outfitters v. Superior Court*, 167 Colo. 456, 448 P.2d 783 (1969). Conversely, our legislature did not intend that the long–arm statute be construed to permit jurisdiction to be asserted where to do so would violate due process of law. *See* section 2–4–201(1)(a), C.R.S. 1973.

■ In *Vandermee v. District Court*, 164 Colo. 117, 433 P.2d 335 (1967), we held that a person or entity whose allegedly tortious conduct in another state causes injury in this state has committed "a tortious act within this state" for purposes of the long–arm statute. *Accord, Jenner & Block v. District Court, supra; Texair Flyers v. District Court, supra; Czarnick v. District Court*, 175 Colo. 482, 488 P.2d 562 (1971); *see Ferrari v. District Court*, 185 Colo. 136, 522 P.2d 105 (1974). Although the subject tire was manufactured in France, the injuries allegedly resulting from that tire's failure occurred in Colorado. Therefore, the "tortious act" standard of the long–arm statute has been satisfied if such a construction of the statute is consistent with due process of law. We now address that constitutional question.

### III.

■ The due process clause of the Fourteenth Amendment to the United States Constitution limits state power over a nonresident defendant by prohibiting the assertion of in personam jurisdiction unless that defendant has "certain minimum contacts with [the forum state] such that mainte-

nance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945); *accord, e. g., McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). As the United States Supreme Court recently stated,

> "The concept of minimum contacts . . . can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system."

*Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 498 (1980); *see Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *International Shoe Co. v. Washington, supra.*

### A.

■ Whether sufficient contacts exist to support jurisdiction over a nonresident defendant depends upon the quality and nature of that defendant's activity in the forum state. *Hanson v. Denckla, supra; International Shoe Co. v. Washington, supra.* Of primary importance is that the defendant by its conduct "purposely avail[ed] itself of the privilege of conducting activities within [that] state." *Hanson v. Denckla, supra*, at 253, 78 S.Ct. at 1240, 2 L.Ed.2d at 1298; *accord, Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Such purposeful activity has been found in products liability cases where a manufacturer delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state. *E. g., Oswalt v. Scripto, Inc.*, 616 F.2d 191 (5th Cir. 1980); *Alliance Clothing Ltd. v. District Court, supra; Czarnick v. District Court, supra; Vandermee v. District Court, supra; Connelly v. Uniroyal,*

*Inc.*, 75 Ill.2d 393, 27 Ill.Dec. 343, 389 N.E.2d 155 (1979), *cert. denied*, 444 U.S. 1060, 100 S.Ct. 992, 62 L.Ed.2d 738 (1980).

A manufacturer may be found to have engaged in the requisite purposeful activity even when title and control of its products pass outside of the forum state to middlemen who eventually resell the products to consumers within the state. *Alliance Clothing Ltd. v. District Court, supra.* Other courts which have considered the question have reached the same result. For example, in *Connelly v. Uniroyal, Inc., supra,* a Belgian tire manufacturer was held to have purposely availed itself of the Illinois market by selling some of its tires in Belgium to General Motors. General Motors installed the tires on automobiles which it manufactured in Belgium for sale in the United States, including Illinois. The plaintiff's father purchased such an automobile from a General Motors dealer in Illinois. In upholding jurisdiction of the Illinois courts over the foreign tire manufacturer in a personal injury suit based upon the failure of a tire in Colorado, the Illinois Supreme Court stated:

> "A manufacturer's economic relationship with a state does not necessarily differ in substance, nor should its amenability to jurisdiction necessarily differ, depending upon whether it deals directly or indirectly with residents of the state. 'With the increasing specialization of commercial activity and the growing interdependence of business enterprises it is seldom that a manufacturer deals directly with consumers in other States. The fact that the benefit he derives from [their] laws is an indirect one, however, does not make [those laws] any the less essential to the conduct of his business; and it is not unreasonable, where a cause of action arises from alleged defects in his product, to say that the use of such products in the ordinary course of commerce is sufficient contact with [such states] to justify a requirement that he defend [there].' (*Gray v. American Radiator & Standard*

*Sanitary Corp.*, 176 N.E.2d 761, 766 [22 Ill.2d 432, 442].)"

*Id.* at 405, 27 Ill.Dec. at 348, 389 N.E.2d at 160; *see Worldwide Volkswagen Corp. v. Woodson, supra; Oswalt v. Scripto, Inc., supra; Thornton v. Toyota Motor Sales U.S.A. Inc.,* 397 F.Supp. 476 (N.D.Ga.1975); *Van Eeuwen v. Heidelberg Eastern, Inc.,* 124 N.J.Super. 251, 306 A.2d 79 (1973).

 Although the materials before us do not reflect the extent to which Michelin of France tires are sold in Colorado,[3] we conclude that it reasonably may be inferred that such sales take place. Michelin of France has sold tires for ultimate use by United States consumers since 1951. In an answer to an interrogatory, Michelin of France admits that "use" of its tires is foreseeable anywhere in the United States, including Colorado. The sales in this country are significant enough in number that Michelin of France imprints required DOT numbers on the tires sold for distribution in the United States. We can and do infer that Michelin of France indirectly seeks to serve a nationwide market, including Colorado. *See Oswalt v. Scripto, Inc., supra; Thornton v. Toyota Motor Sales U.S.A. Inc., supra.*

Although the economic benefits which Michelin of France derives from the eventual sale of its tires in Colorado are indirect and unquantified by the information before us, such benefits are not so fortuitous as to negate "existence of an intent on the manufacturer's part to bring [them] about ...." *Buckeye Boiler Co. v. Superior Court,* 71 Cal.2d 893, 458 P.2d 57, 64, 80 Cal.Rptr. 113 (1969). As a matter of commercial actuality, therefore, Michelin purposefully has availed itself of the Colorado market. *See Buckeye Boiler Co. v. Superior Court, supra; Connelly v. Uniroyal, Inc., supra; see also Alliance Clothing, Ltd. v. District Court, supra.*

**B.**

 In arguing that it has not purposefully availed itself of the privilege of con-

**3.** It is a matter of common knowledge that Michelin–brand tires are marketed extensively in Colorado. The number of such tires manu-

factured by Michelin of France cannot be said to be commonly known.

ducting activities in Colorado and thus has insufficient contacts with this state to support jurisdiction, Michelin of France urges that we concentrate exclusively on the particular tire which gave rise to this suit. That tire was sold at retail in Germany.[4] Because the arrival of that tire in Colorado was purely fortuitous, Michelin of France contends that jurisdiction cannot be asserted over it based upon the presence of *that* tire. *See Hapner v. Rolf Brauchli, Inc.,* 404 Mich. 160, 273 N.W.2d 822 (1978) (opinion of Levin, J.).

In *Worldwide Volkswagen Corp. v. Woodson, supra,* an automobile sold and distributed to the plaintiffs in New York was being driven through Oklahoma when an accident occurred causing injuries. Suit was brought in Oklahoma based upon an alleged defect in the car, naming among the defendants[5] a regional distributor and a New York retailer. The regional distributor confined its distribution of automobiles to retailers in New York, New Jersey, and Connecticut. The retailer from whom the plaintiffs purchased the car in question did business only in New York. In finding that Oklahoma's assertion of jurisdiction over these defendants violated due process, the United States Supreme Court held that the foreseeability that a product will find its way into the forum state, while of some relevance, is not alone a sufficient connection between the forum state and the defendants to constitute "those affiliating circumstances that are a necessary predicate to any exercise of state–court jurisdiction." *Worldwide Volkswagen Corp. v. Woodson, supra,* at 295, 100 S.Ct. at 566, 62 L.Ed.2d at 500; *see Hanson v. Denckla, supra.* The "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Worldwide Volkswagen Corp. v. Woodson, supra* at 298, 100 S.Ct. at 567, 62 L.Ed.2d at 502, quoting from *Hanson v. Denckla, supra;* accord, *Granite States Volkswagen, Inc. v. District Court,* 177 Colo. 42, 492 P.2d 624 (1972); *see Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980).[6]

Michelin of France claims that the arrival in Colorado of the tire in question was even less foreseeable than the presence of the automobile in Oklahoma in *Worldwide Volkswagen Corp. v. Woodson, supra.* But Michelin of France misses the point by examining only whether the subject tire's presence here was foreseeable. The pertinent inquiry is whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Worldwide Volkswagen Corp. v. Woodson, supra* at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501. In pursuing this inquiry, the purposeful contacts which Michelin of France *does have* with Colorado are of prime importance.

In *Worldwide* the defendants' only tie with the forum was the foreseeable presence of the one product which caused the injury. However, the affiliating circumstances absent in *Worldwide* are present here. As noted above, Michelin of France purposely avails itself of the Colorado market by placing its products in the stream of commerce with the foreseeable result that they may be sold anywhere in the United States, including Colorado. *See Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961). It is because of this activity that Michelin of France should reasonably anticipate being required to defend an action here.

---

**4.** Available information does not establish the distribution chain from Michelin of France to the retailer.

**5.** Although also named as parties, neither the foreign manufacturer nor the importer contested jurisdiction.

**6.** In *Jenner & Block v. District Court, supra,* and *Texair Flyers v. District Court, supra,* we said that, in order to satisfy due process requirements for in personam jurisdiction, a nonresident tortfeasor need have no contacts with Colorado in addition to acts in another state which ultimately cause injury here. However, in each of those cases the nonresident had reason to anticipate that his activities might have an injurious effect in Colorado, and had sufficient contacts to meet the due process standards of *Worldwide Volkswagen Corp. v. Woodson, supra.*

## C.

Had the tire which failed been purchased by the plaintiffs from a Colorado retailer who in turn purchased the tire from either Michelin of New York or Sears Roebuck and Company, the link between Michelin of France's purposeful activity in Colorado and this cause of action would be enough to support jurisdiction. *Alliance Clothing, Ltd. v. District Court, supra; see World- wide Volkswagen Corp. v. Woodson, supra.* In this case the presence in Colorado of the particular tire alleged to be defective is unrelated to the commercial channels by which Michelin of France's products nor- mally reach the various states. Therefore, we must determine whether this fact makes it unreasonable or unfair, in a constitutional sense, for Colorado to assert jurisdiction. *See Worldwide Volkswagen Corp. v. Wood- son, supra.* We conclude it does not.

▪ Generally speaking, the more tenu- ous the connection between the cause of action sued upon and the defendant's activi- ties in the forum state, the more substantial the defendant's contacts with the forum state must be to render the assertion of jurisdiction reasonable. *See* 2 J. Moore, *Federal Practice* ¶ 4.25[5] (1980). Thus, where jurisdiction is based upon a single transaction, the cause of action must arise out of that transaction. *Tucker v. Vista Financial Corp.*, 192 Colo. 440, 560 P.2d 453 (1977); *Van Schaack v. District Court*, 189 Colo. 145, 538 P.2d 425 (1975). However, where a defendant has substantial continu- ous contacts with the forum state, exercise of in personam jurisdiction on causes of action wholly unrelated to the defendant's activity in the forum state may comport with due process. *Perkins v. Benguet Con- solidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

▪ An examination of the relationship between the defendant, the litigation, and the forum must be made to determine the reasonableness of a particular assertion of

jurisdiction. *Shaffer v. Heitner, supra.* As we noted in *Waterval v. District Court, supra*, each case involves an ad hoc analysis of the facts and application of basic consti- tutional principles of in personam jurisdic- tion to those facts. Here, it may be that Michelin of France's contacts with Colorado to the extent established by the materials before us are not so extensive as to render it amenable to suit in this state on causes of action unconnected with its Colorado–relat- ed activity. *See Shon v. District Court*, Colo., 605 P.2d 472 (1980); *Tucker v. Vista Financial Corp., supra; Van Schaack v. Dis- trict Court, supra; Ferrari v. District Court, supra.* But, although not directly arising from Michelin of France's purposeful activi- ty in Colorado, the cause of action asserted here is sufficiently related to that activity to render exercise of jurisdiction fair and reasonable.

▪ The tires manufactured by Michelin of France which come into this state through more ordinary means do not differ significantly from the tire which failed. Tires of the same size and tread design are sold to Michelin of New York and Sears Roebuck and Company for resale in the United States, including Colorado. More- over, while the tire in question was sold in Germany, it had DOT markings stamped on it. It may be inferred from this fact that the subject tire was manufactured to meet the same quality standards as those tires normally sent to this country. Thus, the burden on Michelin of France to defend an action based upon this tire is no different than the burden which would arise from a defense of an action relating to any of the tires which reach Colorado as a result of Michelin of France's purposeful activity. *See Buckeye Boiler Co. v. Superior Court, supra.*

▪ The burden to defend is not the only relevant consideration in assessing the reasonableness and fairness of the state's assertion of jurisdiction.[7] Also important is

---

**7.** Elaborating on the protection against litigat- ing in a distant or inconvenient forum, which is one function of the "minimum contacts" tests

for due process, the United States Supreme Court has said:

the plaintiffs' interest in obtaining convenient and effective relief. *See Kulko v. Superior Court, supra; McGee v. International Life Insurance Co., supra; Alliance Clothing, Ltd. v. District Court, supra.* Here, the plaintiffs would be hard pressed to pursue this litigation in France. In addition, this state has an interest in providing a forum to its citizens injured by the alleged tortious conduct of nonresidents. This interest is reflected in our long–arm statute. *Texair Flyers v. District Court, supra; see McGee v. International Life Insurance Co., supra.* Considering these factors together with the limited extent of the additional burden placed upon the defendant, we conclude that Colorado's assertion of jurisdiction in this case does not offend traditional notions of fair play and substantial justice and is consistent with due process of law. *U. S. Const.* amend. XIV; *Colo. Const.* Art. II, § 25.

We discharge the rule to show cause.

"The protection against inconvenient litigation is typically described in terms of 'reasonableness' or 'fairness.' We have said that the defendant's contacts with the forum State must be such that maintenance of the suit 'does not offend "traditional notions of fair play and substantial justice." ' *International Shoe Co. v. Washington, supra,* at 316, 66 S.Ct., at 158, quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940). The relationship between the defendant and the forum must be such that it is 'reasonable . . . to require the corporation to defend the particular suit which is brought there.' 326 U.S., at 317, 66 S.Ct., at 158. Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the

forum State's interest in adjudicating the dispute, *see McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); the plaintiff's interest in obtaining convenient and effective relief, *see Kulko v. Superior Court, supra,* 436 U.S., at 92, 98 S.Ct. at 1697, at least when that interest is not adequately protected by the plaintiff's power to choose the forum, *cf. Shaffer v. Heitner,* 433 U.S. 186, 211, n.37, 97 S.Ct. 2569, 2583, n.37, 53 L.Ed.2d 683 (1977); the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies, *see Kulko v. Superior Court, supra,* 436 U.S., at 93, 98, 98 S.Ct., at 1697, 1700."
*Worldwide Volkswagen Corp. v. Woodson, supra,* at 292, 100 S.Ct. at 564, 62 L.Ed.2d at 498.