Ella WARD, et. al., Plaintiff,

v.

ARMSTRONG WORLD INDUSTRIES, INC., et. al., Defendants.

Goldie STEVENS, Plaintiff,

v.

ARMSTRONG WORLD INDUSTRIES, INC., et. al., Defendants.

Earl G. MEYER, Plaintiff,

v.

ARMSTRONG WORLD INDUSTRIES, INC., et al., Defendants.

No. 87–K–850, 87–K–1162 and 87–K–1577.

United States District Court, D. Colorado.

Jan. 20, 1988.

J. Conard Metcalf, Williams Trine Greenstein and Griffith, P.C., Boulder, Colo., for all plaintiffs.

Jack Kent Anderson, Anderson, Campbell and Laugesen, P.C., Denver, Colo., for defendants Armstrong, ACandS, Carey-Canada, Celotex, Dana, Eagle–Picher, Fibreboard, Flintkote, H.K. Porter, Keene, National Gypsum, Owens–Corning, Owens–Illinois, Rock Wool, U.S. Gypsum and Turner & Newall.

Geoffrey S. Race, Weller, Friedrich, Ward & Andrew, Denver, Colo., for defendant Combustion Engineering.

Thomas N. Alfrey, Kathleen G. Lanterman, Hall & Evans, Denver, Colo., for defendant Raymark.

William A. Tuthill, III, Pendleton & Sabian, P.C., Denver, Colo., for defendant W.R. Grace.

Michael J. Mirabella, Law Firm of T.W. Norman, Lakewood, Colo., for defendant Babcock & Wilcox.

Luke J. Danielson, Denver, Colo., for defendant H & A Const.

David B. Higgins, Long & Jaudon, Denver, Colo., for defendant Garlock & Owens–Corning.

F. James Gallo, Post & Schell, Denver, Colo., for defendant Empire Ace & U.S. Mineral.

Albert E. Zarlengo, Zarlengo, Mott, Zarlengo and Winbourn, Denver, Colo., for defendant Anchor Packing.

## ORDER ON DEFENDANT TURNER & NEWALL'S MOTION TO DISMISS

KANE, District Judge.

Plaintiffs, residents of Colorado, brought these independent actions against various manufacturers of asbestos insulation. Ella Ward and Goldie Stevens raise wrongful death, survivorship, and personal injury claims related to their spouses' asbestos exposure. Earl Meyer seeks damages he allegedly incurred from asbestos exposure.

In each action, defendant Turner & Newall filed a Motion to Dismiss for lack of in personam jurisdiction. T & N asserts the court does not have jurisdiction because the company is organized under the laws of England, maintains its head office there, and otherwise lacks contacts with Colorado sufficient to satisfy jurisdictional requirements. I agree. Therefore, T & N's Motion to Dismiss is granted.

In diversity cases, the extent of federal court jurisdiction is determined by state law. *Yarbrough v. Elmer Bunker & Associates,* 669 F.2d 614 (10th Cir.1982). Colorado's Long Arm Statute, C.R.S.

§ 3–1–124, allows a foreign company to be haled into court to the extent permitted by the due process clause of the Fourteenth Amendment. E.g., *Le Manufacture Francaise des Pneumatiques Michelin v. District of Colorado,* 620 P.2d 1040 (1980). The critical inquiry is whether the defendant had sufficient "minimum contacts" with the forum state under *International Shoe* and its progeny to justify the exercise of personal jurisdiction. *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

T & N maintains the court lacks jurisdiction as the company has no substantial connection with the state of Colorado and has not purposefully availed itself of the privilege of conducting business here. The company has never been qualified to do business in Colorado or had an office, employee or representative, bank account or brokerage, license or franchise here. T & N claims it has not solicited or conducted any business here or received any revenue from Colorado-related activity. Finally, T & N maintains it has committed no tortious acts in Colorado.

These arguments were convincing in an earlier asbestos action before Judge Moore. T & N's motion to dismiss was granted on a finding of insufficient contacts. *Colcord v. Armstrong World Industries,* No. 84–JM–912 (D.Colo. May 13, 1985). Plaintiffs sued T & N as successor to a defunct American corporation, Keasbey & Mattison Company, which manufactured asbestos products sold and distributed in Colorado. Keasbey would have been subject to the court's jurisdiction if still in existence, but jurisdiction extended to T & N only as Keasbey's "alter ego." Judge Moore found the factual record insufficient to base jurisdiction on alter ego theory.

Relying on *Colcord,* I granted Turner & Newall's Motion to dismiss in similar consolidated asbestos actions. Consolidated base file, *Gibson v. Armstrong World Industries, Inc.,* 83–K–1756 (D.Colo. October 3, 1986) (bench ruling granting Turner & Newall motion to dismiss). Plaintiffs claimed T & N was subject to jurisdiction

through its wholly owned subsidiary, J.W. Roberts, Ltd. Roberts owned the trademark of a patented asbestos product, Limpet, which allegedly resulted in injury in Colorado. I held plaintiffs failed to make a prima facie showing of jurisdiction over T & N, rather than Roberts, based on alter ego theory.

Plaintiffs now set forth agreements whereby T & N licensed the use of its machinery, processes and the Limpet product name to other companies.[1] They contend jurisdiction lies over T & N because these other companies manufactured, used or distributed Limpet in the United States. As with Keasbey and Roberts in the earlier cases, however, plaintiffs fail to show why jurisdiction extends to T & N based on the acts of these other companies.

■ Jurisdiction does not extend to T & N for Keasbey's acts either as its successor or alter ego. As discussed above, Judge Moore and I have held T & N was not Keasbey's alter ego. Though the complaint cites T & N as successor to Keasbey, I previously held Nicolet, Inc. liable as successor to Keasbey's asbestos product line. *Gibson v. Armstrong World Industries, Inc.*, 648 F.Supp. 1538 (D.Colo.1986). T & N solely owned Keasbey's stock when the company was liquidated, but Keasbey's assets were all sold to companies other than T & N. T & N did not continue any of Keasbey's product line, and is therefore not liable for its products.

Nor does this court have jurisdiction over T & N directly. Plaintiffs apparently urge "stream of commerce" theory of jurisdiction, as adopted by the Colorado Supreme Court in *Le Manufacture Francaise*, 620 P.2d at 1040 and followed by the Boulder District Court in *Tozzi v. Armstrong World Industries*, 86–CV–0367–3 (July 1, 1986) (allowing jurisdiction over T & N in a similar asbestos action). That theory allows jurisdiction over a company that actively seeks out an international market for its products, with knowledge those products will enter the U.S. market, where it is reasonably foreseeable the products could be carried into the forum state by "the stream of commerce."

According to plaintiffs, T & N engaged in "a scheme for nationwide, interstate distribution and marketing of its Limpet" of unlimited geographical scope. "It is part of a conscious effort to serve the entire U.S. T & N deliberately 'reached out' ... beyond England and beyond the East Coast of the U.S." Response to Turner & Newall Motion to Dismiss at 5 (citations omitted). Based on these assertions, the Boulder court held "Turner & Newall had actively sought out an international market for their products, and knew that these products would ultimately reach the United States. Therefore they had sufficient minimum contacts with Colorado to anticipate an injury caused by their product within the state." *Tozzi*, 86–CV–0367–3, slip op. at 3.

I disagree. The stream of commerce theory is derived from the following passage of *Worldwide Volkswagon v. Woodson:*

> [I]f the sale of a product of a manufacturer or distributor such as Audi or Volkswagon is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other states, it is not unreasonable to subject it to suit in one of those states if its alleged defective merchandise has there been the source of injury to its owner or others. *The forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state.*

444 U.S. 286 at 297–298, 100 S.Ct. 559 at 567, 62 L.Ed.2d 490 (1980) (emphasis added).

---

1. Plaintiffs apparently equate T & N with its subsidiaries, despite rulings of Judge Moore and myself to the contrary, as T & N is party to none of the licensing agreements plaintiffs' introduce in support of their claims. Moreover, plaintiffs' claim T & N licensed the use of the Limpet name is undermined by the fact that Roberts owned the Limpet trademark.

The U.S. Supreme Court recently suggested limits on this theory. *Asahi Metal Industry Co. v. Superior Court of California,* — U.S. ——, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). The Court was unable to agree whether a manufacturer's placement of a product into the international "stream of commerce," foreseeably resulting in contacts with the state, justified the exercise of jurisdiction, or whether due process required action more purposefully directed toward the forum state. However, the analysis set forth in the various opinions is instructive.

Justice O'Conner, writing for the plurality, reviewed recent developments in personal jurisdiction law, noting:

"[T]he constitutional touchstone" of the determination whether an exercise of personal jurisdiction comports with due process "remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, [105 S.Ct. 2174, 2183, 85 L.Ed.2d 528] (1985), *quoting International Shoe Co. v. Washington,* 326 U.S. 310, 316, [66 S.Ct. 154, 158, 90 L.Ed. 95] (1945). "Minimum contacts" must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King,* 471 U.S. at 475, [105 S.Ct. at 2183], *quoting Hanson v. Denckla,* 357 U.S. 235, 253, [78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283] (1958). "Jurisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." Ibid., *quoting McGee v. International Life Insurance Co.,* 355 U.S. 220, 223 [78 S.Ct. 199, 201, 2 L.Ed.2d 223] (1957) (emphasis in original).

*Asahi,* — U.S. at ——, 107 S.Ct. at 1031, 94 L.Ed. at 102.

Thus, "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the act of placing the product into the stream into an act purposefully directed toward the forum State." *Asahi,* — U.S. at ——, 107 S.Ct. at 1033, 94 L.Ed.2d at 104. Under this reasoning, some additional conduct directed toward the forum is necessary for the exercise of jurisdiction.

Four justices adopted the more liberal stream of commerce theory, but noted in their concurring opinion "[t]he stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *Asahi,* — U.S. at ——, 107 S.Ct. at 1035, 94 L.Ed.2d at 107 (Brennan, J. concurring).

Under either of these views, plaintiffs fail to allege sufficient contacts between T & N and the state of Colorado to justify the court's exercise of in personam jurisdiction.[2] Both the plurality and the concurrence stress the necessity of defendant's awareness its products will enter the forum state. Here, plaintiffs show no distribution or marketing system linking T & N and Colorado. Plaintiffs repeatedly emphasize T & N's contacts with the United States but specify only three instances of Limpet or T & N machinery use in Colorado. Use of T & N products in other states or in the nation generally simply does not establish sufficient contacts with this state.[3]

---

**2.** A plaintiff seeking to establish in personam jurisdiction over a nonresident defendant, based on affidavits and other written material submitted before trial, must make a prima facie showing of threshhold jurisdiction. *Behagen v. Amateur Basketball Ass'n. of U.S.A.,* 744 F.2d 731 (10th Cir.1984).

**3.** The *Asahi* court declined to decide whether a court could exercise personal jurisdiction based on a defendant's aggregate contacts with the nation rather than specific contacts with the forum state. — U.S. at ——, n. *, 107 S.Ct. at 1033, n. *, 94 L.Ed.2d at 105, n. *. In a more recent decision involving the extent of personal jurisdiction over a non-resident defendant, the Court declined to address the related theory that a federal court's exercise of personal jurisdiction based on a defendant's national contacts, rather than on contacts with the forum state,

Plaintiffs' argument also fails under Colorado's interpretation of stream of commerce theory. In *Le Manufacture Francaise*, a tire manufactured by Michelin of France caused injury to a plaintiff in Colorado. 620 P.2d at 1042. Although the tire was not sold in the U.S. or to a U.S. distributor, Michelin of France had other direct sales to U.S. distributors. In fact, many Michelin of France's tires were manufactured in accordance with U.S. Department of Transportation regulations and were marked to show compliance therewith. *Id.* at 1043. The Colorado Supreme Court noted Michelin tires were marketed extensively in Colorado, and Michelin of France admitted use of its tires was foreseeable anywhere in the U.S. *Id.* at 1045 and n. 3.

In contrast, there is no evidence T & N's Limpet was used by those allegedly injured in these cases. Nothing in the record shows T & N Limpet was marketed in Colorado. *See also Colcord*, 84–JM–912, slip op. at 4. "Generally speaking, the more tenuous the connection between the cause of action sued upon and the defendant's activities in the forum state, the more substantial the defendant's contacts with the forum state must be to render the assertion of jurisdiction reasonable." *Le Manufacture Francaise*, 620 P.2d at 1047. Absent a factual nexus between the specifically alleged contacts and the injuries complained of, plaintiffs must show contacts sufficiently continuous and systematic to support the exercise of jurisdiction. *Id.* at 1047.

Plaintiffs fail to show it was reasonably foreseeable T & N's asbestos products would be carried by the stream of commerce into Colorado. The affidavits show only occasional use of Limpet and related machinery in Colorado, unrelated to these plaintiffs. In light of this scanty evidence, it is unclear there was even a "stream" of T & N products into Colorado. Use in other states and countries simply does not

would comport with Fifth Amendment due process requirements. "As was the case with *Asahi*, 'we have no occasion' to consider the constitutional issues raised by this theory." *Omni Capi-*

establish an adequate basis for jurisdiction in this state.

The Motion to Dismiss is GRANTED.

*tal International, Ltd. v. Rudolph Wolff & Co., Ltd.,* —— U.S. ——, ——, 108 S.Ct. 404, 409, 98 L.Ed.2d —— (1987).