No. 23140.

PAUL VANDERMEE *v.* THE DISTRICT COURT IN AND FOR THE COUNTY OF ARAPAHOE, IN THE EIGHTEENTH JUDICIAL DISTRICT AND THE HONORABLE DONALD P. SMITH, JR., ONE OF THE JUDGES THEREOF
(433 P.2d 335)

Decided November 6, 1967.

118

WILSON, BOLTZ and BOYENS, for petitioner.

YEGGE, HALL, TREECE & EVANS, for respondents.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

THIS is an original proceeding.

On Vandermee's petition, the respondents were directed to show cause why their order quashing service made in the State of Delaware on Pettibone Mulliken Corporation, a Delaware corporation, should not be vacated. Briefs in support of the respondents' order quashing this service, and in support of the petition have now been filed.

The sole issue involved is whether 1965 Perm. Supp., C.R.S. 1963, 37-1-26 (long arm statute) may lawfully be applied so as to obtain jurisdiction over a non-resident corporation which designs and manufactures an instrumentality outside the State of Colorado, and which instrumentality because of its defective design causes injury to a Colorado resident in the State of Colorado.

The petitioner, Paul Vandermee, a carpenter on a construction site in Arapahoe County, Colorado, was seriously injured when a boom of a crane slipped loose. The crane was furnished on the job and operated by Frohlick Crane Service, Inc., a Colorado corporation, but was the product of Pettibone Mulliken Corporation, a Delaware corporation, which designed and manufactured the crane in the State of New York.

In his amended complaint, the Petitioner alleged negligence on the part of Frohlick and Pettibone. Specifically, it was alleged that Pettibone did negligently and carelessly design the crane which it sold to Frohlick.

Service of process was made on Pettibone in the County of New Castle, State of Delaware, and thereafter a motion to quash this service was filed and heard. The motion was granted by the district court which interpreted the applicable statute and concluded:

". . . not only must the injury complained of have occurred in the State of Colorado but the alleged negligence or negligent acts must also have occurred within this state."

The statutory provisions we are concerned with are

1965 Perm. Supp., C.R.S. 1963, 37-1-26 and 37-1-27, the pertinent portions of which are as follows:

"37-1-26. Jurisdiction of courts. — (1) (a) Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such persons, and, if a natural person his personal representative, to the jurisdiction of the courts of this state, concerning any cause of action arising from:

\* \* \* \* \*

(c) The commission of a tortious act within this state;

\* \* \* \* \*

37-1-27. Service of process. — (1) Service of process upon any person subject to the jurisdiction of the courts of Colorado may be made by personally serving the summons upon the defendant outside this state, in the manner prescribed by the Colorado rules of civil procedure, with the same force and effect as if the summons had been personally served within this state."

We will refer to these provisions of our law as the "long arm statute."

In enacting the long arm statute in 1965, our legislature adopted the same phrase "The commission of a tortious act within this state" as used in the Illinois statute (S.H.A. ch 110 § 17(1) (b)) and otherwise substantially adopted the wording of the Illinois statute.

Some four years prior to the enactment of our long arm statute, the Supreme Court of Illinois in *Gray v. American Radiator & Standard Sanitary Corporation*, 22 Ill.2d 432, 176 N.E.2d 761, interpreted the phrase "the commission of a tortious act within this state" in a case where the facts are essentially the same as involved here. An Illinois resident in Illinois sustained injuries when a water heater exploded. The safety valve was manufactured by a foreign corporation in Ohio, was installed in a water heater in Pennsylvania, and sold to a consumer in Illinois. It was held that the foreign corporation was subject to the jurisdiction of the Illinois

court upon service of summons in Ohio on the registered agent of the foreign corporation.

██ Colorado is known to have adopted into its realm of statutory law provisions from the Illinois statutes, and consequently when the occasion arises, our court frequently gives prime consideration to Illinois precedent when necessary to interpret such a statutory provision. Illinois precedent becomes even more influential when our legislature sees fit to adopt a provision of law from Illinois when there exists at the time of enactment an Illinois decision interpreting identical phraseology as appears in our enactment. In attempting to determine legislative intent, it can be said that strong presumptions exist that our legislature adopted the Illinois provision of law together with the interpretations placed on that provision by the Illinois Supreme Court.

██ The foregoing rule of construction was recently considered in *Hoen v. District Court*, 159 Colo. 451, 412 P.2d 428, wherein we reaffirmed a declaration from *Hallett v. Alexander*, 50 Colo. 37, 114 P.490, 34 L.R.A. (N.S.) 328 as follows:

". . . the General Assembly in adopting substantially an Illinois statute is presumed to have intended that such statute should receive by the courts of this state the same construction given it by the courts of Illinois prior to its adoption in this state."

██ In our view the trial court, when it granted the motion to quash service of process in the State of Delaware on Pettibone, interpreted our long arm statute, as it applies to "tortious act," constrictively and in a way not intended by our legislature. It would appear obvious that the legislative purpose, which inspired the adoption of the long arm statute, was the expansion of our court's jurisdiction within constitutional limitations in order to provide a local forum for Colorado residents who suffer damages in Colorado as a result of tortious acts of non-residents.

As used, the term "tortious act" cannot be disas-

sembled into the noun "act" and the adjective "tortious" without reaching conflicting interpretations of the word "act" with the term "tortious act." The noun "act" implies a single occurrence, a specific event, one happening. The adjective "tortious" implies an act with an attending injury proximately related to that act. The use of the term "tortious act" implies, therefore, the total act embodying the cause and the effect through the continuum of time.

The alleged defect in the design of the crane by Pettibone at the time it was designed and fabricated in New York, was not a tortious act, but rather an unclassified non-entity. As such, it progressed through the channels of sales promotion of cranes and distribution set in motion by the designer and fabricator. As a result, a crane was purchased by Frohlick and put into operation in Colorado. When the alleged defect in the crane then resulted in injury to the petitioner in Colorado, the act that caused the defect at that time became a tortious act, and in our view, it had situs in Colorado.

Somewhat similar reasoning is utilized by the Illinois Supreme Court in *Gray, supra,* as follows:

"Titan seeks to avoid this result by arguing that instead of using the word 'tort,' the legislature employed the term 'tortious act'; and that the latter refers only to the act or conduct, separate and apart from any consequences thereof. We cannot accept the argument. To be tortious an act must cause injury. The concept of injury is an inseparable part of the phrase. In determining legislative intention courts will read words in their ordinary and popularly understood sense."

We are not unaware of decisions of several other jurisdictions which have arrived at an opposite result in construing their long arm statutes which utilize the same or similar phraseology as in our statute. Perhaps the leading case in this category is *Feathers v. McLucas,* 15 N.Y.2d 443, 209 N.E.2d 68, 261 N.Y.S.2d 8. This decision considers and rejects the interpretation of "tortious

act" in *Gray, supra.* However, Chief Judge Desmond, Court of Appeals of New York, in his dissenting opinion comments that the statutory language of New York's long arm statute is taken verbatim from the Illinois statute and he construes "tortious act" substantially as it is construed by the Illinois Supreme Court in *Gray, supra.* Chief Judge Desmond then concludes:

"I see no necessity or warrant for restricting the statutory language 'tortious act within the state' so narrowly as to defeat the apparent legislative purpose and deprive our citizens of the intended benefits of the statutory plan."

Suffice it to say, we fully agree with this quoted statement and adopt it for the purpose of this decision.

The question of "minimal contact" as required by constitutional due process has been discussed in the briefs. It is contended in support of the respondents' action in granting the motion to quash that the affidavit in the record by Pettibone reflects the lack of such "minimal contact" in Colorado. This affidavit states that all design work on cranes is performed by Pettibone in New York, that it has not and is not now doing business in Colorado, that it is not incorporated in Colorado, that it maintains no office or employees in Colorado, and that it has no employees who regularly come into the state of Colorado. However, the concluding statement of this affidavit is as follows:

"7. The defendant, Pettibone Mulliken Corporation, does have a distributor in the State of Colorado, which distributor is independent of and not otherwise connected with the defendant, Pettibone Mulliken Corporation, and which distributor handles all phases of the sale of defendant, Pettibone Mulliken Corporation's products within the State of Colorado after purchasing the same from the defendant, Pettibone Mulliken Corporation, F.O.B. Rome, New York."

In our view, this affidavit does reveal "minimal contact" in Colorado because it clearly reflects that

Pettibone has set up channels of sales promotion and distribution in Colorado for the purpose of selling its products in Colorado.

In considering this issue, it was stated in *Gray, supra,* "As a general proposition, if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products."

We hold, therefore, that the principles of due process relevant to this issue in this case supports jurisdiction in Colorado.

The defendant court improperly granted the motion to quash service of process on Pettibone in the State of Delaware. Accordingly, its ruling on this motion is ordered to be vacated; that the respondent court and the judge thereof enter an order denying Pettibone's motion to quash, and allow Pettibone a reasonable time within which to further plead to the petitioner's amended complaint.

The rule is made absolute.

MR. JUSTICE SUTTON not participating.