**RESOLUTION TRUST CORPORATION, a corporate instrumentality of the United States of America, Plaintiff,**

v.

**Richard D. HEISERMAN, individually and as a general and limited partner in Heiserman Family Partners, Ltd., and as a grantor, trustee and beneficiary of Heiserman Family Trust; Walter C. Kane, Guy E. Boyer, David G. Marberry, John C. Root, Charles R. Babb, James D. Grow, John B. Howell, Chester A. Latcham, Jr., individually and as a general and limited partner in Latcham Family Partners, Limited, and as a grantor, trustee and beneficiary of Latcham Family Trust; William T. McCallum; James C. Shearon, individually and as a general and limited partner in JCS Family Partners, Ltd., and as a grantor, trustee and beneficiary of JCS Family Trust; Heiserman Family Partners, Ltd., a limited partnership; Patricia A. Heiserman, as a general partner and limited partner in Heiserman Family Partners, Ltd.; John Does One and Two, as other unknown general and limited partners of Heiserman Family Partners, Ltd.; Heiserman Family Trust; Richard L. Smith, as a trustee of Heiserman Family Trust; John Does Three and Four, as other unknown trustees and beneficiaries of Heiserman Family Trust; Latcham Family Partners Limited, a limited partnership; John Does Five and Six as other unknown general and limited partners of Latcham Family Partners, Limited; Latcham Family Trust; John Does Seven and Eight, as other unknown trustees and beneficiaries of Latcham Family Trust; JCS Family Partners, Ltd., a limited partnership; Carol M. Shearon, as a general partner and limited partner in JCS Family Partners, Ltd.; John Does Thirteen and Fourteen, as other unknown general and limited partners of JCS Family Partners, Ltd.; JCS Family Trust; John Does Fifteen and Sixteen, as other unknown trustees and beneficiaries of JCS Family Trust; Engel & Rudman, P.C., a Colorado professional corporation; Barry S. Engel, personally and as a shareholder in Engel & Rudman, P.C.; Ronald L. Rudman, personally and as a shareholder in Engel & Rudman, P.C.; John Does Seventeen and Eighteen, as other unknown shareholders in Engel & Rudman, P.C.; and Carolyn P. Boyer, Defendants.**

No. 94SA319.

Supreme Court of Colorado,
En Banc.

June 26, 1995.

Kobayashi & Associates, P.C., John M. Kobayashi, Kathleen M. Kulasza, Michele R. Lamontagne, Denver, Jeremiah B. Barry, Sr. Staff Atty., Resolution Trust Corp., Denver, for plaintiff.

James C. Shearon, Englewood, pro se.

Cooley, Godward, Castro, Huddleson & Tatum, William J. Leone, Denver, for defendants.

Justice KIRSHBAUM delivered the Opinion of the Court.

Pursuant to C.A.R. 21.1, this court has agreed to answer the following questions certified to it by the United States District Court for the District of Colorado (the district court):

A. Whether joint and several liability may be imposed on two or more persons, pursuant to C.R.S. § 13–21–111.5(4), where the alleged "tortious act" is based on negligence, gross negligence, negligence *per se,* breach of the fiduciary duty of due care, or breach of fiduciary duty of loyalty.

B. Whether joint and several liability, pursuant to C.R.S. § 13–21–111.5(4), may be based upon evidence of a course of conduct from which a tacit agreement to act in concert may be implied.[1]

These questions have been certified in connection with proceedings currently pending before the district court involving, *inter alia,* claims relating to the negligent underwriting, approval and subsequent administration of certain commercial banking and commercial real estate loans. We answer both questions in the affirmative.

I

The following undisputed facts are pertinent to this certification proceeding. On May 3, 1993, the plaintiff, Resolution Trust Corporation (RTC) filed this civil action in the district court as a corporate instrumentality of the United States of America and as the assignee of claims from Capitol Federal Savings and Loan Association of Denver (Capitol Federal), a federally chartered savings and loan association formerly located in Aurora, Colorado. Capitol Federal failed in May 1990. On June 15, 1990, the United States Office of Thrift Supervision, pursuant to 12 U.S.C. § 1464(d)(2) (1988 & Supp. V 1993), appointed RTC as Capitol Federal's receiver for the purposes of liquidation and winding up its affairs. On July 12, 1991, all claims against the officers, directors and attorneys of Capitol Federal were sold to RTC pursuant to 12 U.S.C. § 1441a(b)(4) and 12 U.S.C. § 1821(d)(2)(A) (1988 & Supp. V 1993).

The defendant Richard D. Heiserman served as President and a director of Capitol Federal beginning in 1978 and as chairperson of the board from 1983 until May of 1990. At various times during the 1980's, the defendants Walter C. Kane, Guy E. Boyer, David G. Marberry, and John C. Root were officers of Capitol Federal and served on its loan committee. The defendants Charles R. Babb, James D. Grow, John B. Howell, Chester A. Latcham, Jr., William T. McCallum, and James C. Shearon were outside directors of Capitol Federal during varying periods leading up to the failure. The defendants Engel & Rudman, Ronald L. Rudman, and

---

1. Section 13–21–111.5(4) provides for the imposition of "[j]oint liability" rather than "joint and several liability." Section 13–21–111.5(4) also provides that any person held jointly liable pursuant to said section has a right of contribution from other defendants acting in concert.

Barry S. Engel were outside legal counsel for Capitol Federal during the relevant period of time.[2]

In this action, RTC seeks damages against all of the officer and director defendants based upon claims of negligence, negligence *per se*, gross negligence and breach of the fiduciary duty of care.[3] These claims relate primarily to conduct connected with the underwriting, approval, and subsequent administration of commercial banking and commercial real estate loans made by Capitol Federal from 1981 through May 1990. RTC alleges that the officer and director defendants acted tortiously and in concert by adopting inadequate policies and procedures for underwriting the loans and in otherwise failing to exercise adequate oversight over Capitol Federal's business. RTC further alleges that in all cases the officer and director defendants acted as a board of directors or as a loan committee, and not individually, in adopting and implementing these policies and procedures and that votes in favor of these actions were consistently unanimous.

Six series of loan transactions are alleged as the basis of RTC's claims for damages in excess of $50 million. RTC alleges that despite inadequate underwriting practices and policies, the officer and director defendants tortiously approved all of the loan transactions. RTC further alleges that a conspiracy to pursue a common plan or design can and should be inferred from the consistent conduct of the officer and director defendants in unanimously approving each of dozens of loan transactions over a period spanning nearly a decade. RTC has alleged in each claim against the officer and director defendants that they, through their votes on the loan committee or on the board of directors, "consciously conspired and deliberately pur-

sued a common plan or design" within the terms of section 13–21–111.5(4) and are therefore jointly and severally liable for all losses occasioned thereby. RTC also alleges that the officer and director defendants are jointly and severally liable because they acted only as a board of directors or loan committee and did not act individually.

RTC alleges additional claims against certain of the officer and director defendants for breach of fiduciary duty of loyalty. RTC alleges that these defendants diverted funds of Capitol Federal to pay their personal legal fees for establishing trusts and partnerships to protect their assets from legitimate creditors, including RTC. RTC asserts claims against the attorney defendants for breach of fiduciary duty of due care and loyalty,[4] professional negligence, and negligent misrepresentation in connection with legal services provided by those defendants to Capitol Federal's officers and directors in the course of establishing the asset protection trusts and partnerships. In its breach of fiduciary duty claims RTC alleges that the officer and director defendants and the attorney defendants consciously and deliberately pursued a common plan or design and are therefore jointly and severally liable for all losses occasioned by the creation of the asset protection devices.

## II

In construing statutes, courts must give effect to the intent giving rise to the legislation. *Shapiro and Meinhold v. Zartman*, 823 P.2d 120, 123–24 (Colo.1992). To carry out that responsibility courts first look to the statutory language itself, giving words and phrases their commonly accepted and understood meaning. *Id.* If the statutory

2. The defendants Engel & Rudman, Ronald L. Rudman, and Barry S. Engel will be referred to as the "attorney defendants." The other individual defendants will be referred to collectively as the "officer and director defendants."

3. By Memorandum Opinion and Order dated June 16, 1994, the district court rejected RTC's contention that a federal common law rule of joint and several liability under the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 (1988 & Supp. V 1993), applies and concluded

that Colorado's proportionate liability statute, § 13–21–111.5(4), 6A C.R.S. (1987), applies in this case. *RTC v. Heiserman*, 856 F.Supp. 578 (D.Colo.1994).

4. For purposes of this opinion, we will refer to the claims for "breach of fiduciary duty of loyalty" and the claims for "breach of fiduciary duty of due care and loyalty" as "breach of fiduciary duty" claims. *See Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 492 n. 10 (Colo.1989).

language is unambiguous, there is no need to resort to interpretive rules of statutory construction. *Martin v. Montezuma–Cortez Sch. Dist. RE–1,* 841 P.2d 237, 246 (Colo. 1992); *Bloomer v. Board of County Comm'rs,* 799 P.2d 942, 944 (Colo.1990). That is, if courts can give effect to the ordinary meaning of the words adopted by a legislative body, the statute should be construed as written since it may be presumed that the General Assembly meant what it clearly said. *Griffin v. S.W. Devanney & Co.,* 775 P.2d 555, 559 (Colo.1989); *State Bd. of Equalization v. American Airlines, Inc.,* 773 P.2d 1033, 1040 (Colo.1989). Finally, words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly. § 2–4–101, 1B C.R.S. (1980). In this vein, the legislature must be presumed to have acted with full knowledge of relevant judicial precedent on the subject. *Williams v. White Mountain Constr. Co.,* 749 P.2d 423, 428 (Colo.1988); *Smith v. Miller,* 153 Colo. 35, 39, 384 P.2d 738, 740 (1963).

### III

A. Whether joint and several liability may be imposed on two or more persons, pursuant to C.R.S. § 13–21–111.5(4), where the alleged "tortious act" is based on negligence, gross negligence, negligence *per se,* breach of the fiduciary duty of due care, or breach of fiduciary duty of loyalty.

■ In 1986, the General Assembly enacted legislation designed to reform Colorado tort law. Certain portions of that legislation abrogated the doctrine of joint and several liability of joint tortfeasors in civil actions and established a system of proportionate liability based on proportionate fault for multiple tortfeasors. Ch. 108, sec. 1, § 13–21–111.5, 1986 Colo.Sess.Laws 680, 680–81. In the following year, the General Assembly reinstated the application of joint and several liability to its original domain at common law, *i.e.,* actions in concert.[5] Ch. 102, sec. 1, § 13–21–111.5, 1987 Colo.Sess.Laws 551, 551–52. As currently codified, section 13–

21–111.5 provides, in pertinent part, as follows:

**Civil liability cases—pro rata liability of defendants.** (1) In an action brought as a result of a death or an injury to person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury, death, damage, or loss, except as provided in subsection (4) of this section.

. . . .

(4) Joint liability shall be imposed on two or more persons who consciously conspire and deliberately pursue a common plan or design to commit a tortious act. Any person held jointly liable under this subsection (4) shall have a right of contribution from his fellow defendants acting in concert. A defendant shall be held responsible under this subsection (4) only for the degree or percentage of fault assessed to those persons who are held jointly liable pursuant to this subsection (4).

. . . .

§ 13–21–111.5, 6A C.R.S. (1987).

■ To respond to the first question propounded by the district court, we must initially determine the meaning of the term "tortious act" as used in section 13–21–111.5(4) of the statute. According to one well-recognized authority, a "tort," broadly speaking, "is a civil wrong, other than breach of contract, for which the court will provide a remedy in the form of an action for damages." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 1, at 2 (5th ed. 1984); *accord Black's Law Dictionary* 1335 (5th ed. 1979). The adjective "tortious" is defined by *Black's Law Dictionary* as "[w]rongful; of the nature of a tort. . . . To establish 'tortious act' plaintiff must prove not only existence of actionable wrong, but also that damages resulted therefrom." *Black's Law Dictionary* 1335 (5th ed. 1979). In *Vandermee v. District Court,* 164 Colo. 117, 433 P.2d 335 (1967), we had occasion to

---

**5.** W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 46, at 322–23 (5th ed. 1984); Senator Larry Pressler & Kevin V. Schieffer, *Joint and Several Liability: A Case for Reform,* 64 Denv.U.L.Rev. 651, 660 (1987).

construe the term "tortious act" appearing in the Colorado Long Arm statute, which statute contained the following pertinent provisions:

**37–1–26. Jurisdiction of courts.** (1)(a) Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such persons, and, if a natural person his personal representative, to the jurisdiction of the courts of this state, concerning any cause of action arising from:

....

(c) The commission of a tortious act within this state....

1963 C.R.S. § 37–1–26 (1965 Perm.Supp.). In construing such statute, we relied upon those definitions and made the following observations:

The noun "act" implies a single occurrence, a specific event, one happening. The adjective "tortious" implies an act with an attending injury proximately related to that act. The use of the term "tortious act" implies, therefore, the total act embodying the cause and effect through the continuum of time.

*Vandermee,* 164 Colo. at 122, 433 P.2d at 337; *accord Classic Auto Sales, Inc. v. Schocket,* 832 P.2d 233, 235 (Colo.1992); *D & D Fuller CATV Constr., Inc. v. Pace,* 780 P.2d 520, 524 (Colo.1989); *cf. Perlmutter v. Blessing,* 706 P.2d 772, 775 n. 2 (Colo.1985) (noting that reference to the phrase "injury or wrongful death" in the Uniform Contribution Among Tortfeasors Act, §§ 13–50.5–101 to –106, 6A C.R.S. (1987), implies "that the term 'injury' refers to the consequence of a tortious act or omission, such as wrongful death."). We conclude that the term "tortious act" appearing in section 13–21–111.5(4) includes any conduct other than breach of contract that constitutes a civil wrong and causes injury or damages.

▪ We have previously noted that the essence of a civil conspiracy claim is not the conspiracy itself, but the actual damages resulting from the acts done in furtherance of the conspiracy. *Jet Courier Serv., Inc. v. Mulei,* 771 P.2d 486, 502 (Colo.1989); *More v. Johnson,* 193 Colo. 489, 493, 568 P.2d 437,

439–40 (1977); *Contract Maintenance Co. v. Local 105,* 160 Colo. 190, 194, 415 P.2d 855, 856 (1966); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 46, at 324 (5th ed. 1984) ("The gist of the action is not the conspiracy charged, but the tort working damage to the plaintiff.") (citation and internal quotation marks omitted). In view of our conclusion that the term "tortious act" encompasses any wrongful act, other than breach of contract, causing injury or damages, it follows that any negligent conduct resulting in injury or damages is a "tortious act" sufficient to give rise to joint liability pursuant to section 13–21–111.5(4). *Schneider v. Midtown Motor Co.,* 854 P.2d 1322, 1327 (Colo.App.1992) ("[N]egligent entrustment can constitute the predicate 'tortious act' required to establish joint liability pursuant to § 13–21–111.5(4)."). We have held on numerous occasions that "negligent conduct ... which proximately results in injury ... constitutes tortious conduct within the meaning of the long-arm statute." *Texair Flyers, Inc. v. District Court,* 180 Colo. 432, 437, 506 P.2d 367, 370 (1973); *accord Fleet Leasing, Inc. v. District Court,* 649 P.2d 1074, 1078 (Colo. 1982); *Czarnick v. District Court,* 175 Colo. 482, 488 P.2d 562 (1971); *Vandermee,* 164 Colo. at 122, 433 P.2d at 337; *see A.R.B. v. G.L.P.,* 180 Colo. 439, 442, 507 P.2d 468, 469 (1973).

▪ We have also previously indicated that wrongful conduct denominated negligence and wrongful conduct denominated negligence *per se* are encompassed within the meaning of the term "tortious act." *See Thompson v. Tartler,* 166 Colo. 247, 251–52, 255, 443 P.2d 365, 366–67, 369 (1968). The proper question is not whether one can conspire to be negligent, but whether when two or more persons consciously conspire and deliberately pursue a common plan or design, the execution of such common plan or design results in wrongful conduct causing injury or damages. Such conduct would constitute a "tortious act" for purposes of section 13–21–111.5(4). Of course, the execution of a common plan or design may in many circumstances not result in wrongful conduct causing injury or damages.

■ We reject the argument that for purposes of section 13–21–111.5(4) a distinction should be made with respect to the degree of fault or the *mens rea* associated with particular conduct. In *White v. Hansen,* 837 P.2d 1229, 1234 (Colo.1992), we indicated that for purposes of Colorado's comparative fault statute labels differentiating between distinct degrees or qualities of negligence, such as gross negligence, "serve only to distract the trier of fact from a proper determination of comparative fault." We adhere to that view. If unreasonable conduct—negligence—causing injury or damages is sufficient to constitute a "tortious act" for purposes of section 13–21–111.5(4), very unreasonable conduct—gross negligence—causing injury or damages is equally sufficient for those purposes.

■ The directors of a corporation owe fiduciary duties to the corporation and to the shareholders of the corporation. *Bowers v. Rio Grande Inv. Co.,* 163 Colo. 363, 368, 431 P.2d 478, 480 (1967). The tort of breach of fiduciary duty may be based on negligent conduct. *See F.D.I.C. v. Appling,* 992 F.2d 1109, 1114 (10th Cir.1993). We have recognized that conduct constituting a breach of the fiduciary duty is a tortious act which satisfies the element of unlawful act associated with the definition of civil conspiracy. *Jet Courier Serv., Inc.,* 771 P.2d at 502; *Julius Hyman & Co. v. Velsicol Corp.,* 123 Colo. 563, 622, 233 P.2d 977, 1007 (1951). In view of these precedents, we conclude that a breach of the fiduciary duty that causes injury or damages constitutes a "tortious act" for purposes of section 13–21–111.5(4). *See T.A. Pelsue Co. v. Grand Enters., Inc.,* 782 F.Supp. 1476, 1490 (D.Colo.1991).

■ One of the defendants asserts that because the phrase "negligence or fault" appears in section 13–21–111.5 nine times but the term "tortious act" appears once in section 13–21–111.5(4), the term "tortious act" must mean something other than the phrase "negligence or fault." We disagree. As we have indicated, the term "tortious act" has a broad definition that encompasses any wrongful conduct. There is no basis to assume that by using the term "tortious act" in section 13–21–111.5(4) the General Assembly for some reason intended to exclude one or more forms of wrongful conduct from the scope of that term. Had the General Assembly intended to limit the term "tortious act" in section 13–21–111.5(4) to intentional conduct, it would have employed language to that effect. In the absence of such language, we conclude that the General Assembly intended the term to have its full meaning, and that therefore both negligent and intentional acts are sufficient to give rise to joint liability for purposes of section 13–21–111.5(4).[6]

For the forgoing reasons, we answer the first certified question in the affirmative.

## IV

B. Whether joint and several liability, pursuant to C.R.S. § 13–21–111.5(4), may be based upon evidence of a course of conduct from which a tacit agreement to act in concert may be implied.

■ Section 13–21–111.5(4) imposes joint liability on two or more persons "who consciously conspire and deliberately pursue a common plan or design to commit a tortious act." This section, however, does not set out all of the elements of the independent tort of civil conspiracy. *See Jet Courier Serv., Inc. v. Mulei,* 771 P.2d 486, 502 (Colo. 1989); CJI–Civ.3d 27:1. To establish a claim pursuant to section 13–21–111.5(4), evidence of an express agreement is not necessary.[7] *See Larimer & Weld Irrig. Co. v. Walker,* 65 Colo. 320, 323, 176 P. 282, 283–84 (1918); *cf. Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) ("Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and a collocation of circumstances.'") (quoting *United States v. Manton,* 107 F.2d

---

6. Both parties cite extensively to the legislative history of § 13–21–111.5(4). In view of the fact that we find the language of that section clear and unambiguous, we need not resort to other interpretive tools, such as legislative history, to discern the intent of the General Assembly in enacting § 13–21–111.5(4).

7. The defendants' counsel agreed with this characterization at oral argument.

834, 839 (2d Cir.1939)); *United States v. Fox*, 902 F.2d 1508, 1515 (10th Cir.1990) ("[B]y their very nature conspiracies are often provable only by circumstantial evidence."); *United States v. Peveto*, 881 F.2d 844, 854 n. 12 (10th Cir.), *cert. denied*, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989). However, the evidence must reveal some indicia of an agreement sufficient to prove that the defendants consciously conspired and deliberately pursued a common plan or design that resulted in a tortious act. *Schneider v. Midtown Motor Co.*, 854 P.2d 1322, 1326–27 (Colo.App. 1992) (quoting *Martinez v. Winner*, 548 F.Supp. 278 (D.Colo.1982)); *see Hawkinson v. A.H. Robins Co.*, 595 F.Supp. 1290, 1314 (D.Colo.1984) (citing *Morrison v. Goodspeed*, 100 Colo. 470, 482–84, 68 P.2d 458, 464–65 (1937)). This principle is aptly described in one authoritative treatise on torts as follows:

> Express agreement is not necessary, and all that is required is that there be a tacit understanding, as where two automobile drivers suddenly and without consultation decide to race their cars on the public highway. There are even occasional statements that mere knowledge by each party of what the other is doing is sufficient "concert" to make each liable for the acts of the other; but this seems clearly wrong. Such knowledge may very well be important evidence that a tacit understanding exists; but since there is ordinarily no duty to take affirmative steps to interfere, mere presence at the commission of the wrong, or failure to object to it, is not enough to charge one with responsibility. It is, furthermore, essential that each particular defendant who is to be charged with responsibility shall be proceeding tortiously, which is to say with the intent requisite to committing a tort, or with negligence. One who innocently, and carefully, does an act which happens to further the tortious purpose of another is not acting in concert with the other.

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 46, at 323–24 (5th ed. 1984) (footnotes omitted).

 The defendants assert that to be subject to joint liability the actors must knowingly agree to engage in conduct that is known at the time of the agreement to be tortious. We do not agree. While there must be a conscious and deliberate decision to pursue a common plan or design, the actors need not have a "specific intent" to commit a tortious act to be subject to joint liability under section 13–21–111.5(4). In *Morrison*, we recognized the fact that injury or damages resulting from conduct undertaken as the result of a conscious conspiracy and deliberate common plan or design is the significant factor, as the following observation from our opinion in that case indicates:

> Since conspiracy is not civilly actionable per se, but becomes material only if damages result from carrying it out, it need not be shown to have been entered into for the specific purpose of [injuring] the particular person damaged.... If such agreement and concert of action resulted in damages ... it is such result that constitutes [the] cause of action, and it is good as against all who participated in producing it.

*Morrison*, 100 Colo. at 484, 68 P.2d at 465.

 We recognize that because each case will present unique factual circumstances detailed factual findings will be necessary. In some situations, evidence of a course of conduct may well be sufficient to imply a tacit agreement to consciously conspire and deliberately act in concert. *Schneider*, 854 P.2d at 1326–27 (concluding that a jury could find the requisite nexus that would establish a tacit agreement). In others it will not. *Messler v. Phillips*, 867 P.2d 128, 135 (Colo.App.1993) (concluding that the record did not support a determination that the defendant and a third party consciously conspired and deliberately pursued a common plan).

In *Schneider*, the plaintiff was injured by an unlicensed motorist and brought an action against the defendant automobile dealership that sold the motorist the car. Based on evidence that the defendant's agent who sold the car repeatedly sold cars to the unlicensed motorist, that the agent believed the unlicensed motorist to be a "crazy driver" who "drove the wheels off a car," and that the defendant automobile dealership sold the

cars at less profit to encourage repeat business despite the unlicensed motorist's lack of a driver's license and his recklessness with cars; the *Schneider* court determined that a jury could find a tacit agreement between the defendant and its agents to provide vehicles to the unlicensed motorist in exchange for payment in cash and motivation for repeat business. *Schneider*, 854 P.2d at 1326–27. Because injury and damages resulted from such conduct, it was proper to send the claim to the jury on a joint liability theory pursuant to section 13–21–111.5(4).

In *Messler*, the plaintiff purchaser sued the defendant broker on claims of fraud, negligence, and theft in regard to a real estate transaction. When the seller cashed the proceeds check and left the state, the property ultimately was subjected to a foreclosure sale. The trial court ruled that the evidence did not support a finding that the broker had either participated in or had prior knowledge of the seller's plan to commit fraud or theft. However, the trial court also found, based on the broker's romantic involvement with the seller, that the purchaser's loss would not have occurred had the broker not acted in concert with the seller and that their actions were so intertwined as to make apportionment of fault impossible. *Messler*, 867 P.2d at 135. In view of the fact that, as the trial court found, the evidence was insufficient to support a finding that the broker participated in or had knowledge of the fraud or theft, the court of appeals reversed the trial court's judgment. *Id.*

The court of appeals' holding in *Messler* is consistent with the analysis we adopt in this case. The evidence in *Messler* was insufficient to establish that the broker and the seller consciously conspired and deliberately pursued a common plan or design. However, we disapprove of certain dicta in *Messler*, 867 P.2d at 135 ("Nor do we perceive that it is possible to 'conspire' to be negligent."), to the extent such language conflicts with our holding that while there must be a conscious and deliberate decision to pursue a common plan or design, the actors need not have a "specific intent" to commit a tortious act to be subject to joint liability under section 13–21–111.5(4).

For the foregoing reasons, we answer the second certified question in the affirmative.

ERICKSON and LOHR, JJ., do not participate.