Yonoea STADLER, Plaintiff–Appellant,

v.

Steven Henry DEVITO, Custom Credit, Inc., Sunny Frazen, and Michelle Martin, Defendants–Appellees.

No. 95CA2146.

Colorado Court of Appeals, Div. I.

Dec. 27, 1996.

Vincent C. Todd, Lakewood, for Plaintiff–Appellant.

Steven Henry Devito, Littleton, for Defendants–Appellees.

Opinion by Judge ROY.

In this proceeding under the Fair Debt Collection Practices Act, plaintiff, Yonoea Stadler, appeals from a directed verdict entered against her and in favor of defendants, Custom Credit, Inc. (CCI), Steven H. Devito, Sunny Frazen, and Michelle Martin, employees and counsel for CCI. We reverse and remand for a new trial.

The underlying transaction, as nearly as we can determine from the record, was generally as follows. On August 27, 1991, plaintiff issued her personal check in the amount of $9.65 for the purchase of a home-delivered pizza. Plaintiff's bank, in error, refused to honor the check.

Upon being informed that the check had not been honored, plaintiff notified both the pizza vendor and the bank. The bank, thereupon, issued its cashier's check to the pizza vendor, but that check was never cashed.

Thereafter, plaintiff was contacted by the then holder of the original check, which demanded $51.94 for the check, penalties, and costs. The bank issued a second cashier's check, this one payable to that holder, who is not a party to this appeal, for the amount it demanded.

Subsequently, CCI sent plaintiff a demand letter by certified mail pursuant to §§ 13–21–109(3) and 13–21–109(4), C.R.S. (1996 Cum. Supp.). That demand letter was addressed to the address printed on the original check, but plaintiff had moved from that address a few months before she wrote the check.

The certified demand letter was returned to CCI, stamped "unknown." It is undisputed that CCI did not attempt to find a current address for plaintiff, or personally to serve plaintiff with the written demand letter.

Approximately seven months later, CCI brought an action in county court for $100, plus fees and costs for a total of $250. Default judgment was entered, garnishment was issued to the bank and plaintiff's checking account was charged. A motion to set aside the default was filed, and the action was dismissed at the request of CCI and the garnishment was released. Plaintiff testified she was not aware of the collection action until she was notified of the garnishment.

Plaintiff then brought this suit against defendants alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq., (1994) and the Colorado Fair Debt Collection Practices Act, § 12–14–101, et seq., C.R.S. (1991 Repl.Vol. 5A) (Act). After plaintiff presented her case-in-chief, defendants moved for, and were granted, a directed verdict, with the court finding that the defendants had complied with the Act, most particularly the notice requirements. Plaintiff's claims pursuant to the federal act were derivative of her claim pursuant to the Act, and were likewise dismissed. This appeal followed.

I.

Plaintiff contends that the trial court erred in finding that she had not met her burden of presenting a *prima facie* case that defendants had violated the Colorado Fair Debt Collection Practices Act. We agree.

Specifically, we agree with plaintiff that the trial court erred in finding that a letter returned as "unknown" was not "returned as undeliverable" under § 13–21–109(3).

Section 13–21–109, C.R.S. (1996 Cum. Supp.) outlines the method for recovery of damages for checks not paid upon presentment. Under the statute, a collection agency may collect an amount equal to the face amount of the check and, as costs of collection, twenty percent of the face amount of the check, but not less than twenty dollars. Section 13–21–109(1)(b)(II), C.R.S. (1996 Cum.Supp.).

If proper notice is given and the collection agency does not receive proper payment within fifteen days, it may seek treble the face amount of the check, but not less than $100. Section 13–21–109(2), C.R.S. (1996 Cum.Supp.).

The notice required before the holder of the dishonored check can collect treble damages is defined as follows:

Notice that a check ... has not been paid upon presentment shall be in writing and given in person and receipted for, or by personal service, or by depositing the notice by certified mail, return receipt requested and postage prepaid, in the United States mail and addressed to such person at his most recent address known to the sender. *If the notice is mailed and not returned as undeliverable by the United States postal service, notice shall be conclusively presumed to have been given on the date of mailing. For the purpose of this subsection (3), 'undeliverable' does not include unclaimed or refused.*

Section 13–21–109(3), C.R.S. (1996 Cum. Supp.) (emphasis added).

In her case-in-chief, plaintiff presented evidence that the statutory demand letter had been returned to CCI, stamped "unknown," and that CCI had not sent her any other

written notice, nor had it personally served her with the notice. CCI has admitted that no further written notice was given. CCI did, however, proceed to file a complaint against plaintiff in county court under the treble damages provision, § 13–21–109(2).

■ We construe statutes in a manner to further the intent of the General Assembly. *Lakeview Associates, Ltd. v. Maes,* 907 P.2d 580 (Colo.1995).

■ To discern intent, we first look to the language of the statute itself. As to that language, words and phrases should be given their plain, ordinary meaning. And, we presume that the General Assembly understands the import of the words it uses, and if the statutory language is unambiguous, we do not need to resort to other interpretive rules of construction. *Resolution Trust Corp. v. Heiserman,* 898 P.2d 1049 (Colo.1995).

Here, the trial court made the following findings:

> The statute provides that the notice is conclusively presumed to be given unless it is returned as undeliverable. It says undeliverable does not include unclaimed or refused. Undeliverable is not further defined that I can determine and it appears that undeliverable would mean that if it was an insufficient address by which the post office could find a location to deliver.

■ In our view, the trial court's interpretation is too narrow and does not fulfill the General Assembly's intent. The term "undeliverable" is not a separately statutorily defined term. A dictionary definition of "undeliverable" is "not capable of being delivered to an addressee." *Webster's Third New International Dictionary* 2487 (1986).

The General Assembly excluded from the term "undeliverable" mail that is not delivered because it is "refused" or "unclaimed." In making those exclusions, the General Assembly has, within the text, defined, or partially defined, the term "undeliverable" to mean any reason for non-delivery, except "refused" or "unclaimed." The terms "refused" and "unclaimed" denote that the addressee must have been made aware that a certified letter had been dispatched to him or her and either affirmatively rejected delivery or failed to cooperate with the delivery.

The language of § 13–21–109(3) is not the typical language used with respect to service of documents by certified or registered mail return receipt requested addressed to a known, or last known, address. Such service is commonly considered complete upon mailing, or at a designated time following mailing, without regard to delivery or notice to the addressee that it has been dispatched. *See* § 7–27–110(3), C.R.S. (1986 Repl.Vol. 3A) (service on foreign corporation which has not qualified to transact business in this state); § 7–62–108, C.R.S. (1986 Repl Vol. 3A) (service on a limited partnership which has not appointed an agent for service of process).

The use of this atypical language in § 13–21–109(3) is, in our view, significant. The General Assembly must have intended that service by certified mail is not complete if the letters are returned undelivered for any reason other than "refused" or "unclaimed."

■ Here, there is no evidence that plaintiff actually received the statutory written notice required under § 13–21–109(3). Indeed, the evidence in the record is to the contrary. It is undisputed that the notice was returned without delivery and marked "unknown." "Unknown" is not "refused" or "unclaimed" and denotes that the addressee was not, or may not have been, aware that the letter had been dispatched. There is no actual service nor is there service which can be presumed by certified mail. Therefore, without further written notice, pursuant to § 13–21–109(3), the notice required by the statute was not effected.

Failure of a debt collector to give proper notice under § 13–21–109(3) makes it unlawful to attempt to collect damages under § 13–21–109(2).

Section 12–14–128(1)(c), C.R.S. (1996 Cum. Supp.) makes it unlawful for a debt collector, "[t]o recover or attempt to recover treble damages for any check, draft, or order not paid on presentment without complying with the provisions of § 13–21–109, C.R.S." It is undisputed that CCI attempted to collect "three times the face amount of the check but not less than one hundred dollars" as set

forth in § 13–21–109. If the defendants are, in fact, debt collectors, failure to provide proper notice would be unlawful.

Accordingly, the trial court erred in granting a directed verdict against the plaintiff at the close of her case.

## II.

Plaintiff also contends that the demand letter, which was never received by plaintiff, demanded an amount greater than allowed by law. However, because we hold that there was no proper service of the demand letter, the content of the letter is irrelevant. Thus, we do not address this issue.

The judgment is reversed and the cause is remanded for a new trial.

METZGER and HUME, JJ., concur.