The **COLORADO OFFICE OF CONSUMER COUNSEL,** Petitioner–Appellant,

v.

The **PUBLIC UTILITIES COMMISSION OF the STATE of COLORADO; and Commissioners Robert J. Hix, Vincent Majkowski, and Raymond J. Gifford, the Commissioners thereof, individually in their official capacity, Respondents–Appellees.**

No. 00SA233.

Supreme Court of Colorado,
En Banc.

March 4, 2002.

---

Ken Salazar, Attorney General, Simon P. Lipstein, Assistant Attorney General, Denver, Colorado, Attorneys for Petitioner–Appellant.

Ken Salazar, Attorney General, Anne K. Botterud, Assistant Attorney General, Business and Licensing Section, Denver, Colorado, Attorneys for Respondents–Appellees.

Justice BENDER delivered the Opinion of the Court.

## I. Introduction

In this appeal, we address whether rates charged for a prepaid telecommunications plan, the NOW Plan, offered by NOW Communications, Inc., violate Colorado's statutory rate cap for residential telephone service. The Public Utilities Commission (PUC) approved NOW's rates and granted a certificate of public convenience and necessity to NOW Communications, Inc. to provide residential basic local telephone exchange service. The district court affirmed the PUC's order.

Both the PUC and the district court held that the monthly and non-recurring charges for NOW Communication's prepaid residential basic local telephone exchange service do not violate the statutory rate cap for such service because NOW's basic service is bundled with other services. Although the PUC did not consider the issue, on appeal the district court held that the PUC implicitly determined that rates for the NOW Plan are non-discriminatory.

The Office of Consumer Counsel (OCC) directly appeals to this court the ruling of the district court pursuant to section 40–6–115(5), 11 C.R.S. (2001). We hold that residential basic local telephone exchange service is subject to the statutory rate cap of $14.74 per month as set by section 40–15–502(3)(b)(I) (2001), 11 C.R.S. (2001), even if it is combined with other products, such as here, when the final product amounts to no more than basic service.

Hence, we reverse the judgment of the district court and remand this case with directions to return it to the PUC for additional proceedings consistent with this opinion.

## II. Facts and Proceedings Below.

In 1998, NOW filed an advice letter and tariffs with the PUC, as required by statute, for authority to offer basic local exchange service in Colorado. Basic local exchange service consists of the minimum telephone features necessary to make local calls.

NOW's advice letter describes two prepaid basic local telephone exchange service plans

it proposes to offer residential and business customers in Colorado: the NOW Plan and non-NOW Plan. Only the residential rates for the NOW Plan are pertinent to this appeal. The non-NOW Plan, which meets the statutory rate cap and is not a subject of this dispute, is residential basic local telephone exchange service for $14.74 a month with a non-recurring connection fee of $35. The NOW Plan consists of residential basic local telephone exchange service, the option to pay bills and make changes to service at payment centers, and toll restriction, which limits the customer's ability to make long-distance calls, for $36.50 per month and $45 to install. Questions regarding the legality of both monthly and one-time, or non-recurring, charges of the NOW Plan form the basis of this appeal.

The rate cap is set by section 40–15–502(3)(b)(I).[1] This statute describes the general assembly's policy goals in making residential basic local telephone exchange service available to all residents of Colorado. It also states that monthly rates for such service are to remain at the levels in effect on May 24, 1995, or $14.74.

The NOW Plan is marketed to customers who are unable to obtain residential telephone service from Qwest,[2] the incumbent local exchange provider in Colorado, because they have credit problems or are unemployed. In contrast to the requirements of Qwest and NOW for the non-NOW Plan, NOW Plan customers do not undergo a credit check or need to provide proof of employment.

The PUC required NOW to file an amended advice letter to remedy certain deficiencies, which are not at issue here. After NOW filed this amended advice letter, the OCC filed a protest to NOW's tariffs. At the OCC's request, the PUC suspended NOW's tariffs and held a hearing before an Administrative Law Judge (ALJ) to determine if the tariffs for the NOW Plan violate the rate cap for basic local exchange service found in section 40–15–502(3)(b)(I) and whether the rates are just, reasonable, affordable, and nondiscriminatory as required by regulation 723–38–3.2.2.7, 4 C.C.R. (2001).

The ALJ rejected NOW's arguments that the NOW Plan is not residential basic local exchange service but is bundled service that is exempt from the statutory rate cap. The ALJ issued a recommended decision that the PUC permanently suspend NOW's tariffs on the grounds that the NOW Plan tariffs violate the statutory rate cap.

The PUC Staff and NOW filed exceptions to the ALJ's decision. The PUC thereafter issued an order granting the exceptions and reversing the ALJ's recommended decision. The PUC held that the rates for the NOW Plan, as bundled service, do not violate the statutory rate cap and that they are just and reasonable. It further determined that because the monthly recurring rates for the NOW Plan are not subject to the statutory rate cap, the non-recurring installation fees are likewise exempt from the rate cap. The PUC did not consider whether the rates for

1. Section 40–15–502, 11 C.R.S. (2001) provides in pertinent part:
   Expressions of state policy. . . .
   (2) Basic service. Basic service is the availability of high quality, minimum elements of telecommunications services, as defined by the commission, at just, reasonable, and affordable rates to all people of the state of Colorado. . . .
   (3) Universal basic service—affordability of basic service. (a) The commission shall require the furtherance of universal basic service, toward the ultimate goal that basic service be available and affordable to all citizens of the state of Colorado. . . . The commission shall have the authority to regulate providers of telecommunications services to the extent necessary to assure that universal basic service is provided to all consumers in the state at fair, just, and reasonable rates.

(b)(I) Consistent with the public interest goal of maintaining affordable and just and reasonably priced basic local telecommunications service for all citizens of the state, the commission shall structure telecommunications regulation to achieve a transition to a fully competitive telecommunications market with the policy that prices for residential basic local exchange service, including zone charges, if any, do not rise above the levels in effect on May 24, 1995, for comparable service. . . .

2. At the time NOW Communications filed its advice letter, the incumbent telephone company in Colorado was U.S. West, which subsequently merged with Qwest. To avoid confusion, we refer to the incumbent telephone company as Qwest.

the NOW Plan are discriminatory. The OCC applied to the PUC for a rehearing, reargument, or reconsideration of the decision. The PUC denied the application.

On appeal, the district court affirmed the PUC's order. It agreed that the NOW Plan is bundled service, and that the statute applies only to residential basic local telephone exchange service, not to bundled service. Therefore, the district court reasoned, the rate cap is inapplicable to the monthly and non-recurring installation rates of the NOW Plan. Finally, the district court held that the PUC implicitly found that NOW's rates are non-discriminatory, and that this implicit finding of fact is supported by the record.

The OCC directly appeals the ruling of the district court to this court.

### III. Analysis

The OCC presents three issues for our review:[3] (1) whether the statutory rate cap found in 40–15–502(3)(b)(I) applies to bundled telephone service that includes residential basic local exchange service; (2) whether the rate cap applies to non-recurring charges related to basic local exchange service; and (3) whether the PUC erroneously failed to determine if rates for the NOW Plan are discriminatory.

Despite the phrasing of the first issue on appeal, we reach only the narrow question of whether the NOW Plan is residential basic local exchange service that it is subject to the rate cap. Because of our resolution of this issue, we do not decide whether the rate cap applies to bundled service generally.

### A. Standard of Review

■ This court's review of a PUC decision is limited "to determin[ing] whether the commission has regularly pursued its authority, ... whether the decision of the commis-

sion is just and reasonable and whether its conclusions are in accordance with the evidence." § 40–6–115(3), 11 C.R.S. (2001); *Phoenix Power Partners, L.P. v. Colo. Pub. Utils. Comm'n*, 952 P.2d 359, 364 (Colo.1998). Because the PUC administers public utilities laws, PUC rulings are given respectful consideration and the PUC's findings of fact are considered final. *Id.* However, questions of law are to be determined de novo by the courts. *Id.;* § 40–6–115(3). As a consequence, we are not bound by the PUC's rulings on legal issues.

The PUC argues that the PUC has plenary authority to regulate utilities in Colorado and that the rate cap statute imposes no restrictions on the PUC's power to regulate residential basic local exchange service rates. Rate making by the PUC is a factual determination. Therefore, the PUC argues, the district court correctly held that the PUC properly pursued its authority when it ruled that the rates for the NOW Plan do not violate the rate cap.

While it is true that the legislature has delegated the power to set rates for utilities to the PUC by way of section 40–3–102, 11 C.R.S. (2001), the PUC's authority in this regard is limited by statute. *City of Montrose v. Pub. Utils. Comm'n*, 732 P.2d 1181, 1186 (Colo.1987) ("[T]he legislature may restrict the Commission's discretion in matters of rate making."); *Pub. Utils. Comm'n v. Colo. Motorway, Inc.*, 165 Colo. 1, 7, 437 P.2d 44, 46 (1968) ("The Commission is a creature of statute. Both the power and scope of its authority and its procedures are necessarily controlled by the Act upon which it relies.").

■ The Colorado General Assembly has set forth maximum rates for basic local telephone exchange service. The question before this court is whether this statutory mandate applies to the NOW Plan. Therefore, this case presents a question of statu-

---

**3.** Specifically, the OCC presented these questions for review:

(1) Whether the Commission and the District Court erred in finding that the cap on the prices of residential basic local exchange service in § 40–15–502(3)(b)(I), C.R.S., did not apply to residential basic local exchange service when that service is included in a package with other services.

(2) Whether the Commission and the District Court erred in finding that the word "prices" in § 40–15–502(3)(b)(I), C.R.S. did not include non-recurring connection charges.

(3) Whether the District Court erred in finding that the Public Utilities Commission implicitly determined that NOW had sustained its burden of proving that its rates are non-discriminatory.

tory interpretation, and does not implicate the PUC's rate making authority. Statutory interpretation is a question of law. As discussed above, we are not bound by the interpretation of the PUC and consider the interpretation of the rate cap statute de novo. *Powell v. Colo. Pub. Utils. Comm'n,* 956 P.2d 608, 613 (Colo.1998); *Fogg v. Macaluso,* 892 P.2d 271, 273 (Colo.1995).

## B. The Colorado Telecommunications Rate Cap Statute

■ The task of the court in interpreting a statute is to determine and give effect to the intent of the legislature. *Resolution Trust Corp. v. Heiserman,* 898 P.2d 1049, 1053 (Colo.1995). If the plain language of the statute clearly expresses the legislative intent, then the court must give effect to the ordinary meaning of the statutory language. Likewise, the court should avoid interpreting a statute in a way that defeats the obvious intent of the legislature. *Id.*

■ Further, a statute must be read and considered as a whole. Each part of the statute must be given consistent and harmonious effect. *Farmers Ins. Exch. v. Bill Boom Inc.,* 961 P.2d 465, 470 (Colo.1998).

The rate cap statute itself expresses the unambiguous intent of the legislature: "Consistent with the public interest goal of maintaining affordable and just and reasonably priced basic local telecommunications service for all citizens of the state ...." § 40–15–502(3)(b)(I). These words demonstrate that the legislature intended for each citizen of Colorado to be offered basic local telephone exchange service at just, reasonable, and affordable rates.

In addition, the rate cap statute specifies the method by which the PUC is to achieve the goal of telephone service for all Colorado residents: "[T]he commission *shall* structure telecommunications regulation ... with the policy that prices for residential basic local exchange service ... *do not rise above the levels in effect* on May 24, 1995...."[4] *Id.* (emphasis added).

4. Since enactment of the statute, the PUC has approved adjustments in the rate cap. The cur-

■ Further, the statute provides three exceptions to the rate cap. Subparagraph (I) permits the PUC to adjust rates according to changes in the gross domestic product. Subparagraph (III) allows an increase in rates if necessary to recover costs associated with upgrading a provider's network and if the upgrades are approved or required by the PUC. Finally, under subparagraph (V), if the PUC expands the definition of residential basic local exchange service, providers may recover costs associated with the additional features. § 40–15–502(3)(b)(I), (III), (V). The enumeration of three specific exceptions to the rate cap precludes the court or the PUC from reading implied exceptions into the statute. *People v. In re A.W.,* 982 P.2d 842, 850 (Colo.1999).

The language of section 40–15–502(3)(b)(I) lends itself to one interpretation: a command that the PUC must apply the rate cap to all residential basic local telecommunications exchange service unless one of the exceptions apply. Furthermore, rates that meet the rate cap satisfy the policy goals of justness, reasonableness, and affordability.

However, this interpretation does not provide a complete answer to the question of whether bundled service that contains residential basic local telecommunications exchange service is subject to the rate cap. We therefore turn to definitions of residential basic local telecommunications exchange service and bundled service with the command of the rate cap statute in mind.

## C. Residential Basic Local Telecommunications Exchange Service

Section 40–15–102(3) defines residential "basic service" as "telecommunications service which provides a local dial tone line and local usage necessary to place or receive a call within an exchange area and any other services or features that may be added by the commission...." Further, section 40–15–102(29) defines "telecommunications service"

rent rate is $14.74 per month.

as "electronic or optical transmission of information...."

Section 40–15–102(3) also authorizes the PUC to add services or features to the general definition of basic service. The PUC has added several services and features, including facsimile and data transmission capability, access to emergency services, customer billing, white page directory listing, access to operator services, and access to toll services, to the definition of basic service. *See* 723–2–17.1 to 723–2–17.1.14, 4 C.C.R. (2001).[5]

The statutes and PUC regulations do not provide a definition of "bundled service." However, in its order, the PUC describes bundled service as "services above and beyond the basic service package."

### D. The NOW Plan

■ Applying the above statutes and definitions to the NOW Plan, we conclude that the plan is residential basic local telecommunication exchange service, even though it is combined with other services, and is subject to the rate cap. This is apparent because, as discussed above, the NOW Plan offers customers a "local dial tone line and local usage necessary to place or receive a call within an exchange area." As discussed below, the services bundled with the basic local exchange service in the NOW Plan are non-telecommunications services and therefore do not change the nature of the basic service.

■ In addition to a dial tone and the ability to make local calls, the NOW Plan includes toll restriction and gives customers the option to pay bills at service centers.[6] The PUC argues that toll restriction and the bill payment options operate as "services above and beyond the basic service package." We do not agree.

The ability to pay a bill at a service center does not involve the "electronic or optical transmission of information" and is therefore not a telecommunications feature or service as defined by section 40–15–102(29). Simi-

larly, toll restriction actually removes a feature of basic service as defined by regulation 723–2–17.1.7 and thus cannot be categorized as telecommunications services beyond the basic service package.

In its order, the PUC analogized the items added to basic service in the NOW Plan to "advanced services," which are defined in section 40–15–102(2), 11 C.R.S. (2001) as "custom calling features known as speed dialing, 3 way calling, call forwarding, and call waiting." Again, the examples given in this statute are telecommunications features, not business-related features as is the option to pay bills at a service center.

Finally, NOW did not argue and the PUC did not find that the NOW Plan rates fit into one of the statutory exceptions to the rate cap. Thus, we conclude that the NOW Plan is residential basic local telecommunication service with a few extra items of business convenience for NOW and its customers. As such, NOW cannot circumvent the rate cap by labeling this product as bundled service. Accordingly we hold that the NOW Plan is subject to the statutory rate cap for residential basic local telephone exchange service.

The PUC explained in its order that the rates for the NOW Plan are just, reasonable, and affordable. We do not question the appropriateness of these factual findings. However, this inquiry by the PUC was premature because the Commission failed to determine first, as a matter of statutory interpretation, whether the NOW Plan rates meet the rate cap or one of the three enumerated exceptions.

Our duty is to interpret a statute as written. Likewise, it is not within the province of the PUC or this court to assess the desirability or wisdom of the rate cap statute. *Kallenberger v. Buchanan,* 649 P.2d 314, 318 (Colo.1982) ("One of the fundamental tenets of our constitutional system is that courts do not approve or disapprove the wisdom ... or

5. Colo.Code Regs., *available at* http://www.dora.state.co.us/puc/rules/723–3.pdf (last visited February 27, 2002).

6. NOW's CEO testified and the PUC found that the NOW Plan rates include an administrative

surcharge that covers the cost of NOW's advertising and marketing. Because these costs are not relevant to the statutory definition of telecommunications services, we do not consider them as here as additional features of the NOW Plan.

the desirability of legislative acts."). Therefore the sole authority to revise the command of the rate cap statute rests with the legislature.

Because the PUC only fully considered the first question presented on appeal, and because resolution of the remaining two issues is dependent on the PUC's reconsideration of the first, we have here limited our review to resolution of the first issue as discussed above.

## IV. Conclusion

For the reasons discussed, we reverse the judgment of the district court and remand this case with directions to return it to the PUC for proceedings consistent with this opinion.